**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA**

**Case No.: _____**

WALTER QUAY and BONNIE QUAY,

      Plaintiffs,

vs.

LOANCARE, LLC, a foreign limited
liability company d/b/a LoanCare
Account Servicing and LAKEVIEW
LOAN SERVICING, LLC a Florida
limited liability company,

      Defendants.

_____/

## COMPLAINT

The Plaintiffs, WALTER QUAY and BONNIE QUAY ("Homeowners") sue the Defendants, LOANCARE, LLC, a foreign limited  liability company d/b/a LoanCare Account Servicing ("LoanCare")and LAKEVIEW LOAN SERVICING, LLC ("Lakeview") and allege:

### JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (Federal Question) and 12 U.S.C. § 2605(f) (Damages for RESPA Violations).

2.      The Court has personal jurisdiction over the Defendant under 12 U.S.C. § 2605 as the property which is the subject of this litigation is located within the District.

### PARTIES

3.      The Homeowners are adult residents of Gulf County, Florida, and are, in all respect material hereto, sui juris.

4.      LoanCare is a foreign limited liability company that is doing substantial business within the District, including the servicing of the mortgage loan of the property that is the subject

1

of this litigation, and is, as a consequence thereof, subject to the jurisdiction of this Court.

5.    Lakeview, is a Florida limited liability company, that is doing substantial business within the District, including upon information and belief, the servicing of the mortgage loan of the property that is the subject of this litigation as successor to LoanCare, and is, as a consequence thereof, subject to the jurisdiction of this Court.

FACTS

6.    At all times material hereto, the Homeowners are the owners of residential real estate that is located at 2004 Garrison Avenue, Port Saint Joe, Florida 32456 (the "Subject Property").

7.    At all times material hereto, the Homeowners entered into a promissory note ("Note") and security instrument ("Mortgage") regarding a ("Mortgage Loan") with the original lender, Centennial Bank ("Lender") on or about December 23, 2013.

8.    At all material times, LoanCare was assigned and named as the Loan Servicer for the Mortgage Loan.

9.    At all times material hereto, the Homeowners paid for their residential property insurance through an escrow account that was administered through LoanCare.

10.    At all times material, hereto, the residential property insurances that was purchased on behalf of the Homeowners by LoanCare through disbursements from the escrow account was placed with Security First Insurance with a policy bearing policy number SFIH8613738-03 (Third Renewal)/SFIH868613738-04 (Fourth Renewal) for the respective periods of December 20, 2015 - December 20, 2016 and December 20, 2016 – December 20, 2017 for the time period immediately prior to the events serving as the basis for this Complaint.

11.    At all times material hereto, the Homeowners made all of their scheduled

payments on the Mortgage Loan, including all payments required to be paid into the escrow account for the purpose of paying property taxes and a homeowner's insurance policy.

12.     At all times material hereto, LoanCare returned an escrow payment back to the Homeowners in January 2018, in an amount over $1,000.00.

13.     At all times material hereto, the Homeowners contacted Loan Care subsequent to receiving the reimbursement check from the escrow account to determined why this money had been returned to them.  The Homeowners were advised that the check was in fact from the escrow account, and directed them to cash the check.

14.     At all times material hereto, the Homeowners advised LoanCare that they would cash the check, and them send another check back to LoanCare, specifically to pay for homeowners' insurance.

15.     At all times material hereto, LoanCare advised the Homeowners that they had already sent money to the insurance company for the homeowners insurance policy.

16.     At all times material hereto, the Homeowners sent an additional check in the amount of $1,000.00 to pay into the escrow account for a Fifth Renewal of the existing homeowners insurance policy.

17.     At all times material hereto, and unbeknownst to the Homeowners, Loan Care, instead of paying for a Fifth Renewal of the existing homeowners insurance policy with Security First Insurance, purchased force-placed insurance coverage for the Subject Property with American Security Insurance Company under policy number MIP-RCH-00744 ("Force-Placed Policy") naming Lakeview and LoanCare as the named insureds.

18.     On or about October 10, 2018, the Homeowner sustained substantial damages to the Subject Property that was caused by Hurricane Michael (the "Loss").

19.     At all times material hereto, the Homeowners attempted to report the Loss to Security First Insurance on a timely basis, but were advised that the premium for that insurance policy had not been paid since December 2017.

20.     At all times material hereto Homeowners subsequently contacted LoanCare, who admitted that it had made a mistake regarding the escrow account and the renewal of the existing homeowners insurance policy, but advised that it had been able to obtain another homeowners insurance policy which back-dated the coverage dates to December 20, 2017.

21.     At all times material hereto, LoanCare advised the Force-Placed Insurance Company of the existence of the loss to the Subject Property.   The Force-Placed Insurer acknowledged the Loss to the Subject Property and assigned a formal claim number of 00201033306 (the "Claim").

22.     At all times material hereto, the Insurer conducted an inspection of the Subject Property, and an investigation of the Claim, and denied coverage under the policy because the scope of the loss and estimate of the damages were less than the policy deductible.

23.     At all times material hereto, neither LoanCare nor Lakeview challenged the scope of the loss and estimate of damages to the Subject Property by the Force-Placed Insurer regarding the Loss from Hurricane Michael.

24.     At all times material hereto, the Homeowners have attempted to challenge the scope of the loss and estimate of damages to the Subject Property by the Force-Placed Insurer regarding the Loss from Hurricane Michael, but have been opposed to their right to challenge the Claim because they were not insureds under the Force-Placed Insurance.

25.     At all times material hereto,  the rights of the Homeowners have been further impaired because the Force-Placed Insurance Policy only provides coverage for the dwelling, and

does not provide the Homeowners with coverage for their contents/personal property that was lost or damaged as a result of Hurricane Michael, not provides coverage for the Homeowner's loss of use of the Subject Property or additional expenses that were incurred by the Homeowners as a result of Hurricane Michael.    The Homeowners have been impaired in their ability and right to challenge the Claim because they may not be entitled to a claim of statutory attorney's fees as a non-party to the Force-Placed Insurance.

26.    At all times material hereto, the Homeowner has complied with, or met, all of the conditions precedent to the filing of this action, or such conditions precedent have been waived by the conduct of the Mortgage Company.   (A copy of the Notice of Error/Request for Information and Certified Mail Receipt are attached hereto as Composite Exhibit "A").

<u>COUNT I – ACTION FOR DAMAGES UNDER 12 U.S.C § 2605</u>

27.    The Plaintiffs realleges numbered paragraphs one (1) through twenty-six (26), as if set forth more fully herein, and would allege still further:

28.    Pursuant to 12 C.F.R. § 1024.17(f), the Defendants were required to perform an escrow analysis to determine if there was any surplus, shortage and deficiency.

29.    Pursuant to 12 C.F.R. § 1024.17(f), the Defendants were required to notify the borrower promptly if there was any shortage or deficiency in the escrow account.

30.    Pursuant to 12 C.F.R. § 1024.17(k)(5) the Defendants were required to make timely disbursements from the escrow account to pay for hazard insurance

31.    Pursuant to 12 C.F.R § 1024.33(c)(2) the Defendants were required to "[b]eginning on the effective date of transfer of the servicing of any mortgage loan, with respect to payments received incorrectly by the transferor servicer (rather than the transferee servicer that should properly receive the payment on the loan), the transferor servicer shall promptly either: (i) Transfer

the payment to the transferee servicer for application to a borrower's mortgage loan account, or (ii) Return the payment to the person that made the payment and notify such person of the proper recipient of the payment.

32.     Pursuant to 12 C.F.R § 1024.34(a) the Defendants were required, "If the terms of a mortgage loan require the borrower to make payments to the servicer of the mortgage loan for deposit into an escrow account to pay taxes, insurance premiums, and other charges for the mortgaged property, the servicer shall make payments from the escrow account in a timely manner."

33.     Pursuant to 12 C.F.R. § 1024.37(c)(1)(i), the Defendants were required, regarding force-placed insurance to, "[d]eliver to a borrower or place in the mail a written notice containing the information required by paragraph (c)(2) of this section at least 45 days before a servicer assesses on a borrower such charge or fee."

34.     Pursuant to 12 C.F.R. § 1024.37(c)(1)(ii), the Defendants were required, regarding force-placed insurance to, "[d]eliver to the borrower or place in the mail a written notice at least 15 days before a servicer assesses on a borrower a premium charge or fee related to force-placed insurance."

35.     Pursuant to 12 C.F.R. § 1024.37(c)(2), Defendants were required, regarding force-placed insurance to make specific disclosures in the notice to the borrower regarding the force-placed insurance .

36.     Pursuant to 12 C.F.R. § 1024.14, the Defendants were prohibited from taking any kickbacks or fees from insurance companies for the placement of force-placed insurance on mortgaged property.

37.     Pursuant to 12 C.F.R. § 1024.15, the Defendants were required to disclose the

existence of any "affiliated business arrangements" such as an arrangement with insurance companies for the placement of force-placed insurance on mortgaged property.

38.     Pursuant to 12 C.F.R. § 1024.35(d), the Defendants were required to "[w]ithin five days (excluding legal public holidays, Saturdays, and Sundays) of a servicer receiving a notice of error from a borrower, the servicer shall provide to the borrower a written response acknowledging receipt of the notice of error."

39.     Pursuant to 12 C.F.R. § 1024.35(e)(1), the Defendants were required to commence a reasonable investigation regarding the Notice of Error within seven (7) days.

40.     Pursuant to 12 C.F.R. § 1024.35(e)(1), the Defendants were required to correct the errors set forth in the Notice of Error, if the reasonable investigation confirmed the servicing error, or, in the alternative, provide a written response to the borrower regarding the Notice of Error, and the results of the reasonable investigation.

41.     Pursuant to 12 C.F.R. § 1024.35(e)(4), the Defendants were required to provide the borrower with copies of all of the documents that it relied in the reasonable investigation and reply to the borrower in connection with the Notice of Error.

42.     Pursuant to 12 C.F.R. § 1024.36(c), the Defendants were required to acknowledge a Request for Information within five (5) days from the receipt thereof.

43.     Pursuant to 12 C.F.R. § 1024.36(d), the Defendants were required to acknowledge a Request for Information within ten (10) days from the receipt thereof, and provide such information as requested by the borrower.

44.     Pursuant to 12 C.F.R § 1024.38, the Defendants were required to have policies, procedures and requirements in place for the proper servicing of a mortgage loan, including the administration of the escrow account and disbursements from an escrow account for the placement

of hazard insurance on the mortgage property.

45.     At all times material hereto 12 U.S.C. § 2605 permits an action by a borrower against a loan servicer for the failure to properly service a residential mortgage loan under the above-named sections of Regulation X, including the failure to maintain reasonable general servicing policies, procedures, and requirements under 12 C.F.R. § 1024.38.

46.     At all times material hereto, 12 C.F.R. § 1024.38 and 12 U.S.C. § 2605 were expressly designed to protect residential borrowers such as the Homeowner, and the Homeowner falls within the scope of such protections for the purposes of this cause of action.

47.     At all times material hereto, the Defendants failed to meet each and every one of the requirements set forth above in 12 C.F.R. §§ 1024.17, 1024.33, 1024.34, 1024.35, 1024.36, 1027.37 and 1027.38 (collectively referred to as "Regulation X").

48.     At all times material hereto, the Homeowners were within the scope of the borrowers which  12 U.S.C. § 2605 and Regulation X were meant to protect.

49.     As a direct and proximate result of the Defendants' failure to meet the requirements of 12 U.S.C. § 2605 and Regulation X, the Homeowners have sustained substantial economic damage including additional property and structural damage to the Subject Property; a loss of the rights to insurance benefits from the original Insurer due the improper force-placed insurance; and a loss of rights to challenge the claims decision of the Force-Placed Insurer.

WHEREFORE, the Plaintiff demand the entry of judgment against the Counterclaim Defendant for (a) actual and statutory compensatory damages, (b) reasonable attorneys fees and taxable costs as the prevailing party under 12 U.S.C. § 2605; (c) trial by jury on all issues so triable as a matter of right, and such further relief as this Court deems to be just and proper under all of the facts and circumstances of this matter.

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the above pleading has been filed with the Clerk of Court on the 2nd day of July 2020 through the CM/ECF filing system, and served by process upon each of the above-named Defendants.

Respectfully submitted,

By: /s/ *Larry Moskowitz, Esq.*

Larry Moskowitz, Esquire
Fla. Bar. No. 829587
Larry Moskowitz, P.A.
*Attorneys for the Plaintiffs*
400 S.E. 9th Street
Ft. Lauderdale, FL 33316
Phone: (954) 797-7990
Email: pleadings@werepresentyou.com

**<u>EXHIBIT "A"</u>**

<u>Exhibit "A"</u>

# LARRY MOSKOWITZ, P.A.
### ATTORNEYS AT LAW

**Principal Office:**

400 SE 9th Street
Fort Lauderdale, Florida 33316

Telephone (954) 797-7990
Facsimile (954) 333-6254

Website:
www.larrymoskowitzpa.com

**Satellite Offices:**

Miami
15715 S. Dixie Highway
Suite 329
Miami, Florida 33157

Orlando
698 N. Maitland Avenue
Suite 300
Maitland, Florida 32751

Panama City
9108 Front Beach Road
Panama City Beach, FL 32407

**VIA CERTIFIED MAIL**
**RETURN RECEIPT:** 7019 1120 0000 4856 1140

September 30, 2019

Loan Care, a ServiceLink Company
Attn: Mortgage Resolution
P.O. Box  8068
Virginia Beach, Virginia 23450

RE:    BORROWER(S) NAME(S):  Walter B. Quay
        LOAN NUMBER:              0023567506
        PROPERTY ADDRESS:      2004 Garrison Avenue
                                          Port St. Joe, Florida 32456

**NOTICE OF ERROR PURSUANT TO 12 CFR § 1024.35**
**AND REQUEST FOR INFORMATION PURSUANT TO 12 CFR § 1024.36**

Dear Loan Servicer:

Please be advised that this office represents your Borrower, Walter B. Quay (hereinafter referred to as the "Borrower" or "Homeowner") in connection with the force placed insurance on the Property Address with American Security Insurance Company ("Assurant") under policy number MLR930631100 "Subject Policy").   The Subject Policy had effective policy dates of December 20, 2017 through December 20, 2018.

Up until December 20, 2017, the Borrower paid for property taxes and property insurance through an escrow account that was administered by Loan Care.   For reasons that are currently unknown, Loan Care placed force-placed insurance on the Property Address, and refunded the escrow account to the Borrower in January 2018.    Upon receipt of the escrow account funds, the Borrower contacted Loan Care regarding those funds.   Loan Care conceded that transmitting the escrow account funds was their mistake, and the Borrower advised that he will write a check to Loan Care to replenish the escrow account.   Loan Care directed the Borrower to not write the check because the premium for insurance was being paid to the insurance company.

In full reliance of the representations of Loan Care, the Borrower cashed the check, and did not replenish the escrow account.   In full reliance upon the representations of Loan Care, the Borrower was lead to believe that full coverage with their existing residential property insurance through December 2018 would be maintained.

It is the contention of the Borrower that Loan Care completely failed to comply with the requirements of 12 C.F.R. § 1024.37.

On October 10, 2018, the Property Address sustained significant damage from Hurricane Michael.   The Borrower sustained significant damage to the other structures of the Property Address and a significant loss of personal property/contents that were contained within the Property Address.   Once the storm passed the Borrower attempted to contact what he believed was his existing property insurance company to make a formal claim.   He was informed that the coverage for the Property Address had lapsed as of December 2017 due to the non-payment of the premium.

The Borrower called Loan Care to inquire what happened.   Again, Loan Care admitted its mistake in obtaining force-placed insurance through Assurant.   Loan Care offered the remedy of refunding a portion of the premium (i.e. the difference paid for the force-placed insurance and the amount that would have been paid through escrow for his existing property insurance).   That action, in and of itself, is an admission of liability by Loan Care in obtaining force-placed insurance.

However, the problem is that the force-placed insurance through Assurant only covered the Lender's interest in the building/dwelling, but not the Borrower's interest in other structures and personal property/contents.

Additionally, Assurant hired Pilot Catastrophe Service, Inc. ("Pilot") to perform an inspection of the Property Address and provide an evaluation of the scope of the loss and estimate of damages.  The evaluation of the damage to the Property Address resulted in a net claim of $0.00.

The Borrower was not satisfied with the evaluation because it provided no funds or benefits to restore the Property to its pre-loss condition, in addition to not providing coverage for other structures and contents.  The Borrower authorized his own inspection.  That evaluation resulted in damages to the Building/Dwelling in the amount of $24,433.88, and damages to Other Structures in the amount of $1,876.33.  The inspection did not evaluate the loss to content/personal property, which the Borrower estimates is over $10,000.00.

Clearly, the limited evaluation authorized by Assurant was intentionally designed to result in a calculation of damages that was less than the policy deductible.  We have analyzed the conduct of Assurant, and have concluded that it is evidence of bad faith.  The existence of bad faith on the part of Assurant raises a significant question about the level of Loan Care's due diligence about the qualifications and reputation of Assurant before it placed the force-placed insurance.  It also raises a significant question whether Loan Care had a pre-existing business relationship with Assurant wherein it received a kick-back of all premiums placed with Assurant.  These are substantial questions that we plan to explore with our following Request for Information.

Accordingly please accept this Notice of Error (hereinafter referred to as the "NOE") under 12 CFR § 1024.35(b)(4) as a violation of the Real Estate Settlement Practices Act ("RESPA") for, "Failure to pay taxes, insurance premiums, or other charges, including charges that the borrower

and servicer have voluntarily agreed that the servicer should collect and pay, in a timely manner." There are also violations of 12 CFR § 1024.34(a) and 12 CFR § 1024.37(c).    12 U.S.C. § 2605(f)(1)(A) grants the Homeowners actual damages and nominal damages for any RESPA Violation, including the failure to timely investigate and cure a Notice of Error or the failure to respond timely to a Request for Information under 12 C.F.R. § 1024.36.   12 U.S.C. § 2605(f)(3) also awards the Homeowner reasonable attorney's fees and costs incurred for a RESPA Violation.

The Notice of Error can be cured in this instance by agreeing in writing to indemnify the Borrower for the damages to other structures, loss or damage to personal property, and loss of use of the Property as a result of Hurricane Michael.  This represents the coverage the Borrower would have had if Loan Care had paid the premium for full insurance coverage.  Loan Care can also assign to the Borrower all causes of action or first-party claims, as the named insured, against Assurant.

12 C.F.R. § 1024.35 requires that the error be cured within thirty (30) days from receipt of the Notice of Error.

Please also accept this correspondence as a formal Request for Information under 12 C.F.R. § 1024.36.  We hereby request that you provide us within thirty (30) days the following items:

a.  A full audit of the Borrower's escrow account;
b.  Any contracts or agreements between Loan Care (or the Lender) with  American Security Insurance Company/Assurant;
c.  A list of all borrowers for which Loan Care established force-placed insurance through American Security Insurance Company/Assurant;
d.  All correspondence between Loan Care and American Security Insurance Company/Assurant regarding the placement of force-placed insurance for this Borrower, and;
e.  All correspondence between Loan Care and American Security Insurance Company/Assurant regarding the Hurricane Michael claim for this Borrower;

You are hereby notified of our intent to commence litigation on behalf of your Borrowers if you fail to correct the error and provide the requested information within thirty (30) days.

We look forward to communicating with you about this Notice of Error forthwith.

Very truly yours,

/s/ *Larry Moskowitz*

LARRY MOSKOWITZ, ESQ.

**SENDER:** *COMPLETE THIS SECTION*

- ■ Complete items 1, 2, and 3.
- ■ Print your name and address on the reverse so that we can return the card to you.
- ■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Loan Care, a ServiceLink Company
Attn: Mortgage Resolution
P.O. Box 8068
Virginia Beach, VA 23450

|||||||||||||||||||||||||||||||||||||
9590 9402 5108 9092 1174 23

2. Article Number *(Transfer from service label)*

7019 1120 0000 4856 1140

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____     ☐ Agent
                      ☑ Addressee

B. Received by *(Printed Name)*        C. Date of Delivery

3. Service Type
- ☐ Adult Signature
- ☐ Adult Signature Restricted Delivery
- ☒ Certified Mail®
- ☐ Certified Mail Restricted Delivery
- ☐ Collect on Delivery
- ☐ Collect on Delivery Restricted Delivery
- ☐ Insured Mail
- ☐ Insured Mail Restricted Delivery (over $500)

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

- ☐ Priority Mail Express®
- ☐ Registered Mail™
- ☐ Registered Mail Restricted Delivery
- ☒ Return Receipt for Merchandise
- ☐ Signature Confirmation
- ☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053                      Domestic Return Receipt